# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Troy Leiferman, Kimberly Leiferman, Thomas Leiferman, Virginia Leiferman, Brian Leiferman, Cindy Leiferman, Frank Leiferman, and Marnie Leiferman, | Civil No. 09-2976 (DWF/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Estate of Judith Stoll and Joseph A. Girardi as Executor of the Estate of Judith Stoll, | |
| Defendant. | |

---

Christopher M. Roe, Esq., Kevin A. Velasquez, Esq., and Randall C. Berkland, Esq., Blethen, Gage & Krause, PLLP, counsel for Plaintiffs.

John M. Riedy, Esq., Maschka Riedy & Ries, PLLP, and Robert B. Christie, Esq., Henderson & Lyman, counsel for Defendants.

---

This matter is before the Court on a Motion to Dismiss for lack of personal jurisdiction brought by Defendants the Estate of Judith Stoll and Joseph A. Girardi, as Executor of the Estate. Plaintiffs' Complaint, originally filed in Minnesota District Court, Blue Earth County, asserts a "Declaratory Action for Completed Gift" and a claim for promissory estoppel. The claims arose after Defendant Girardi, in his capacity as Executor, informed the Plaintiffs that he would seek to enforce a set of promissory notes that the Plaintiffs signed but that the Plaintiffs believe reflected a gift made to them by

Ms. Stoll in 2005, prior to Ms. Stoll's death. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

Plaintiffs Troy, Thomas, Brian, and Frank Leiferman are Judith Stoll's nephews. Thomas and Virginia Leiferman, husband and wife, and Troy and Kimberly Leiferman, husband and wife, are Minnesota residents. (Compl. at 1.) Brian and Cindy Leiferman, husband and wife, are Nebraska residents. (*Id*. at 2.) Frank and Marnie Leiferman, husband and wife, are Iowa residents. (*Id*.) Mr. Girardi is a resident of Illinois, as was Ms. Stoll at the time of her death in 2008.

As way of background, the Court will summarize the salient facts related to the Plaintiffs' causes of action. According to the Complaint, in March 2005, Judith Stoll flew Plaintiffs and their families to her home in Florida. (*Id*. at 3.) At that time, the Complaint alleges, Ms. Stoll informed Plaintiffs of her plan to make a gift to Plaintiffs "in the amount of the highest of their home mortgage balances." (*Id*.) Subsequently, Ms. Stoll's attorney in Florida sent a letter to the nephews stating that Ms. Stoll requested that the firm "assist her in arranging payment [] which will, in part, enable you to pay the outstanding balance of your mortgage." (Compl. Ex. A.) The letter directly referenced that a certain portion would be given "in exchange for a Promissory Note which bears the minimum interest rate required by law of Three Percent (3%) per annum, with principal due and payable on demand." (*Id*.) Plaintiffs allege that they contacted the Florida attorney, who informed Plaintiffs that the Promissory Notes were structured as such for gift tax purposes.

2

After Plaintiffs signed the Promissory Notes, Judith Stoll made a "gift" of $242,000 to each nephew's family. (Compl. at 3.) Plaintiffs contend that in order to take advantage of the IRS annual gift tax exclusions, $20,000 was initially gifted to each of the Plaintiffs and their children, while the remaining amount was "documented as a loan with the annual gift tax exclusion amount to be forgiven each subsequent year." (*Id*. at 5.) Plaintiffs allege that at Ms. Stoll's death, any remaining loan balance was to be forgiven. (*Id*.) Plaintiffs further allege that in September 2005, Troy Leiferman spoke with Ms. Stoll on the phone from Minnesota and was assured that no interest or other payments needed to be made on the so-called Promissory Note. (Compl. at 7.)

Ms. Stoll died on October 3, 2008. At that time, Mr. Girardi attempted to collect on the Promissory Notes on behalf of the estate. This litigation ensued.

## DISCUSSION

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the

facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). Each defendant's contacts with the forum state must be assessed individually. *See, e.g., Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Id.* (citing *Northrup King*, 51 F.3d at 1387). The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of

conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9 (1984)). Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). The third factor

5

distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 523 n.4 (citing *Wessels*, 65 F.3d at 1432 n.4).

Plaintiffs assert that both specific and general jurisdiction exist here.

In support of their assertions of specific jurisdiction, Plaintiffs point to Ms. Stoll's contacts with them in Minnesota, which enticed them to travel to Florida to discuss the alleged gift that would cover their mortgages. (Troy Leiferman Decl. ¶¶ 13-17.) Plaintiffs also contend that Ms. Stoll's attorney contacted the Minnesota nephews in Minnesota explaining the terms of the Promissory Note. (Compl. ¶¶ 16-19.) Then, each of the Plaintiffs signed Promissory Notes in their home states (including Troy and Tom signing in Minnesota) and sent them to Florida. (*Id*.) In August 2005, Ms. Stoll's attorney mailed checks to the Minnesota nephews in Minnesota. (*Id*. ¶¶ 14-23.) Subsequently, Ms. Stoll traveled to Minnesota for the Christmas holiday in 2005, at which time she spoke with Plaintiffs Troy and Tom Leiferman about the alleged gift. (Troy Leiferman Decl. ¶ 25; Tom Leiferman Decl. ¶ 11.) Based on these contacts, Plaintiffs contend that Ms. Stoll should have foreseen that litigation could be brought in Minnesota related to her representations to Minnesota residents, such representations that allegedly induced Plaintiffs to sign a loan document. Moreover, Plaintiffs contend that because the Promissory Notes contemplated continued payments of interest over a period of years in Minnesota, minimum due process requirements are met to support a finding of specific jurisdiction.

Further, Plaintiffs contend that Ms. Stoll's contacts with Minnesota were so continuous and systematic as to create general personal jurisdiction over her. Plaintiffs

point to a variety of Ms. Stoll's contacts with the state. First, Ms. Stoll was born and raised in Minnesota. (Margaret Leiferman Decl. ¶ 4.) After high school, she attended the College of St. Teresa in Rochester, Minnesota, for four years. (*Id*. ¶ 5.) From approximately 1978 to 1996, she worked in Minnesota as Vice President at Valley News Company, a Minnesota corporation. (*Id*. ¶¶ 8, 10.) Ms. Stoll was married in Minnesota in 1996. (*Id*. ¶ 11.) That year, she moved to Ohio, but remained on the board of directors at Valley News up until her death. (*Id*. ¶ 11-12.) In her role on the board, she attended board of director meetings in Minnesota and, at one point in 2007, attended a mediation in the Twin Cities between Valley News and a former employee. (Troy Leiferman Decl. ¶ 12.) According to Plaintiffs, she also traveled to Minnesota to talk to a Valley News' attorney and Tom Leiferman to discuss her plans for transferring her share ownership. (Tom Leiferman Decl. ¶¶ 12-13.) At the time of her death, Ms. Stoll owned 19% of the shares of Valley News, valued at just under $2 million in value. (Margaret Leiferman Decl. ¶ 14; Troy Leiferman Decl. ¶ 9.)

In further support of their assertions of general jurisdiction, Plaintiffs point to Ms. Stoll's attempts to relocate to Minnesota prior to her death. Specifically, in 2006, Ms. Stoll hired a real estate agent in Minnesota to assist her with looking for properties near Mankato, Minnesota. (Rich Draheim Decl. ¶¶ 3, 6.) Ms. Stoll made at least four trips to Minnesota to look at property and entered into discussions to purchase a lake lot near Mankato owned by Valley News. (*Id*. ¶ 4.) Ms. Stoll also met and communicated with a Minnesota builder to discuss her real estate plans. She paid for the builder to fly to Montana to work out plans for her log home to be built on Lake Washington. (Holmgren

Decl. ¶¶ 7-8.) Ultimately, Ms. Stoll did not purchase the lot from Valley News and she backed away from her building plans. Plaintiffs further point to Ms. Stoll's discussions in April 2008 with her niece, Monica Opalinski, in Eden Prairie, Minnesota, about finding a suitable piece of property closer to the Twin Cities. (Opalinski Decl. ¶ 5.) Ms. Stoll and Ms. Opalinski spoke "on the phone almost every day" about finding a parcel of property and worked with a real estate agent from Edina Realty to this end. (*Id.* ¶ 4.)

Ms. Stoll also had some property holdings in Minnesota. She owned a 20% beneficial interest in the residue of her late father's estate, the holdings of which included farmland acreage in Le Sueur County and Freeborn County, Minnesota, interests in Minnesota limited partnerships, securities and cash located at a Minnesota bank, and shares of Swan Lake Hilton, a Minnesota corporation with its headquarters in Mankato, Minnesota. (Margaret Leiferman Decl. ¶¶ 21-22.)

Finally, Ms. Stoll and her husband were treated at the Mayo Clinic in Rochester, Minnesota, for lengthy periods after she moved out of the state. In 1997, Ms. Stoll stayed with her sister in Mankato for approximately six months while she was treated for breast cancer. (Margaret Leiferman Decl. ¶ 15.) Then, in 2001, Ms. Stoll and her husband rented an apartment in Rochester for an extended period of time so that her husband could be treated for neck and throat cancer at the Mayo Clinic. (*Id.* ¶ 16.)

Defendants assert that neither specific nor general jurisdiction exists here. Specifically, Defendants contend that the relevant transactions were not activities "purposely directed" at residents of Minnesota, and that specific jurisdiction therefore

8

does not exist.  Further, Defendants assert that Ms. Stoll did not maintain such continuous and systematic contacts with Minnesota to support a finding of general jurisdiction.

The Court finds that general jurisdiction exists.  Ms. Stoll maintained lifelong contacts with the state, including her holdings in the Hecht estate and Valley News, her continual business and personal trips to Minnesota, and her contacts regarding her apparent plans to return to the state.  Despite the fact that she moved away from Minnesota in 1996, the nature and quality of Ms. Stoll's contacts with Minnesota were, at the time of the transactions with the nephews and at the time of her death, such that she should have reasonably anticipated being haled into court here.  She held stock, owned and sought to acquire property in Minnesota, contracted with residents of the state, and even solicited the making of such contracts herself.  She also maintained several business relationships with residents of Minnesota, including with her former employer, Valley News, at least one real estate agent, and at least one attorney.  Although each of these contacts alone may not demonstrate personal jurisdiction, the cumulative effect of all of the contacts together result in a *prima facie* showing of general jurisdiction.

Because the Court has found that general jurisdiction exists, the Court need not address the parties' arguments regarding specific jurisdiction.  For these reasons, the Court denies Defendants' Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. [4]) is **DENIED**.


Dated: February 12, 2010                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge